# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY B. POSEY, on behalf of A.S.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOANNE B. BARNHART, )<br>Commissioner, Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-05-446-RAW |

## REPORT AND RECOMMENDATION

The claimant Gary B. Posey requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for his son A.S.P. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that A.S.P. was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED AND REMANDED.

## Social Security Law and Standard of Review

Disability for persons under the age of 18 according to the Social Security Act is defined as a medically determinable physical or mental impairment that causes marked and severe functional limitations that can be expected to cause death or that have lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate

a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and "the substantiality of the evidence must take into account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires claimant establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant establish he has a severe impairment or combination of impairments. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

**Background and Procedural History**

A.S.P. was born on November 15, 1990, and was 13 years old at the time of the administrative hearing. The claimant alleges A.S.P. was disabled as of March 1, 1997, because of a conduct disorder and borderline intellectual functioning. The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*) on June 30, 2003, which application was denied.[2] After a hearing on July 13, 2004, ALJ Larry Weber found A.S.P. was not disabled in a decision dated September 15, 2004. The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He determined A.S.P. had severe impairments, *i. e.*, adjustment disorder, with mixed disturbance of emotions and conduct, and borderline intellectual functioning, but that such impairments did not meet, medically equal, and were not functionally equivalent to any of the relevant listings. The ALJ concluded that A.S.P. was therefore not disabled (Tr. 15).

**Review**

The claimant argues that the ALJ erred at step three by failing to recognize all of A.S.P.'s marked impairments, evidence of which was contained in: (i) a report from Dr.

---

[2] Prior applications for supplemental security income payments were filed on A.S.P's behalf in March 1997 and April 1999. Both applications were denied. In his decision, the ALJ declined to reopen either application because good cause had not been shown to do so. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

William Mitchell, M.D., which the claimant contends was improperly rejected by the ALJ; and (ii) records from the Durant Middle School, which the claimant contends were completely ignored by the ALJ. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that A.S.P.'s performance on the Oklahoma Core Curriculum Tests administered in February and March 2002 was unsatisfactory in reading, history, geography, the Arts, and writing (Tr. 99). Although he received a satisfactory score in science, A.S.P.'s mathematics score indicated he had limited knowledge (Tr. 103). In March 2003, A.S.P. underwent a psychological examination at the Bryan County Health Department with counselor Greg Howse. Mr. Howse found A.S.P. had a full scale IQ of 77 (as measured by the WISC-III) and noted A.S.P.'s reading and spelling skills were at a first grade level and his math skills were at a fourth grade level. He found A.S.P. was functioning within a borderline range of intellectual functioning, had no significant attentional problems, and no inability to attend (Tr. 135-40). In December 2003, A.S.P.'s special education teacher Sherri Anderson completed a questionnaire for the Disability Determination Service. A.S.P. was enrolled in special education classes with Ms. Anderson for reading, English, and math, and his current grade level was 2.5 in reading, 3.5 in math, and 3.0 in written language. Ms. Anderson noted A.S.P. had a "serious problem" reading and comprehending written material, learning new material, and recalling and applying previously learned material. She found A.S.P. had "a very serious problem" in understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions. Ms. Anderson indicated that

on a daily basis, A.S.P. had a serious problem focusing long enough to finish an assigned activity or task, carrying out multi-step instructions, and working at a reasonable pace and finishing on time. She noted no problems or only slight ones with respect to A.S.P.'s interaction and relation with others (Tr. 108-17). In July 2004, Dr. Mitchell completed a form indicating that A.S.P. had marked functional impairment in cognitive development and motor development and extreme functional impairment in communicative development, social development, personal/behavioral development, and concentration, persistence, and pace. In the explanation to his findings, he stated that A.S.P.: (i) had severe difficulty maintaining focus and concentration; (ii) was verbally and physically aggressive without provocation; (iii) was defiant with authority figures; (iv) had poor short-term memory making it difficult to follow simple requests; (v) had severe problems adapting to change; (vi) exhibited poor judgment and communicative skills; and, (vii) had to be directed and re-directed day to day. He noted these problems occurred in the home and school setting (Tr. 233-36).

The ALJ determined that A.S.P. suffered from severe impairments of adjustment disorder and borderline intellectual functioning (Tr. 15). He determined, however, that A.S.P. was not disabled because his impairments were not functionally equivalent to a listing, *i. e.*, the ALJ found that A.S.P. had no extreme limitations, and no more than one marked limitation, in functioning within the six pertinent domains.[3] In reaching this conclusion, the

---

[3] When determining if an impairment is functionally equivalent to a listing, the ALJ considers how a child functions within six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R.

ALJ specifically rejected the report prepared by Dr. Mitchell, which indicated that A.S.P. had extreme limitations in four domains and marked limitations in two others. Further, the ALJ apparently rejected (because he did not discuss) the records submitted by the Durant Middle School, which suggested that A.S.P. had marked limitations in three domains.

The record does not reflect whether the ALJ considered Dr. Mitchell to be a treating physician. If so, any opinions expressed by Dr. Mitchell in his report would be entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. If for some reason Dr. Mitchell's opinions were not entitled to controlling weight, the ALJ was required to determine the proper weight to give them by analyzing *all of the factors* set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ 416.927].'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. Those factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not

---

§ 416.926a(b)(1)(i) - (iv). In order to find disability, the child must have an extreme limitation in at least one domain or a marked limitation in two domains. 20 C.F.R. § 416.926a(a).

the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ intended to reject Dr. Mitchell's opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotations omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300. The ALJ did not, however, apply such reasoned analysis to the opinions expressed by Dr. Mitchell in his report; instead, he criticized the report as being "outdated" and "a check the box type of assessment." He also noted that the one *narrative* opinion in Dr. Mitchell's report was "rebutted" by the test results reported by Mr. Howse, a non-physician counselor who examined A.S.P. (Tr. 19).

Nor did the ALJ discuss the limitations suggested by the records from the Durant Middle School, *e. g.*, the report from Ms. Anderson. Although "an ALJ is not required to discuss every piece of evidence[,]" *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), he "*must* discuss 'the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004), *quoting Clifton,* 79 F.3d at 1010 [emphasis added]. Further, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is

uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Thus, the ALJ should have explained here why he chose to reject the probative evidence provided by the Durant Middle School.

The ALJ appears to have relied on the report prepared by Mr. Howse, which *does* tend to support his conclusion that A.S.P. was not disabled. The Commissioner argues that additional support is provided by the opinions of the non-examining state agency physicians, but the ALJ did not discuss (or even mention) these opinions in his decision. The undersigned Magistrate Judge may therefore not speculate on the weight the ALJ may have assigned them. *See Hamlin*, 365 F.3d at 1215 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."). *See also Drapeau*, 255 F.3d at 1214 (A reviewing court is "not in a position to draw factual conclusions on behalf of the ALJ."), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). Nor may the opinions be considered as providing any support for the ALJ's rejection of Dr. Mitchell's opinions. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962).

Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for proper analysis of the opinions expressed by Dr. Mitchell and the evidence provided by the Durant Middle School. If after such analysis the ALJ concludes that A.S.P. had marked limitations in functioning in more than one of the six pertinent domains (or extreme limitations in any of the domains), the ALJ should find A.S.P. to be disabled.

**Conclusion**

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 29th day of January, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**